REGAN, Judge.
The plaintiff, Louis V. Dusang, a carpenter, filed this suit against the defendants, Southern Desk Equipment Company, Inc., and its workmen’s compensation insurer, Liberty Mutual Insurance Company, endeavoring to recover the sum of $14,000.00 representing workmen’s compensation for total and permanent disability which he asserts was sustained as the result of an accident which occurred in the course and scope of his employment on June 4, 1964. Also, the plaintiff requests the imposition of penalties and attorney’s fees.
*341 The defendant answered denying responsibility for the alleged accident and explained therein that the plaintiff had fully recovered from any injury incurred by him, which it insists was merely a muscle strain and a possible fracture of a rib. In the alternative, the defendant asserted that any disability incurred by the plaintiff emanated from a preexisting condition not aggravated or affected by the accident.
After a trial on the merits, the lower court rendered judgment in favor of the plaintiff, awarding him compensation for total and permanent disability and ordering -.the defendants to pay all future medical •expenses up to the maximum of $2,500.00. !It rejected the plaintiff’s claim for attorney's fees and penalties.
From that judgment, the defendant has prosecuted this appeal. The plaintiff has .-answered the appeal wherein he insists that the lower court erred in denying his re•quest for the imposition of penalties and .attorney’s fees.
The record discloses that the plaintiff -was employed by Southern Desk Equipment •Company as a journeyman carpenter. On June 4, 1964, he was endeavoring to lift, -with the assistance of several other men, .a marble table top weighing between 400 and 500 pounds when he felt a sharp pain in the left side of his chest. When the ac- • cident occurred, he was in an enclosed area -which was very hot, humid and lacked ven-tilation. He continued to work; however, -that night he experienced severe pain in the chest area. The next day, he reported to work, informed the foreman of his dis- • comfort and was referred for treatment to - the offices of Doctors Houston, Roy, Faust . and Ewin where an electrocardiogram was taken because of the chest pains. They subsequently referred him to Dr. Stanton L. ’ Middleton, an internist, who ordered him - confined to the Baptist Hospital for a possible myocardial infarct or occlusion, and • several more electrocardiograms were • taken. This physician diagnosed a muscle : strain of the left chest wall with the possibility of a fractured rib. On June 8th, the plaintiff was released from the hospital.
The evidence convinces us that prior to the date of the accident, the plaintiff enjoyed good health and actively engaged in heavy physical labor.
There is no serious dispute that he incurred an injury as the result of the lifting accident and that this incident caused a sharp pain in the plaintiff’s left side. It is also substantially undisputed that the serial electrocardiograms taken on June 5, 6, and 8, 1964, revealed that significant changes were occurring within the plaintiff’s heart during this period of time and that he incurred some form of coronary occlusion which resulted in angina pectoris. However, there was no diagnosis by any of the experts of a myocardial infarction, or death of the heart muscle itself.
The plaintiff produced several medical experts who testified in his behalf. Dr. Leo Labourdette, who treated the plaintiff following his discharge from the hospital, summarized that the accident resulted in an acute change in the plaintiff’s heart, consisting of an occlusion with ischemia, or lack of proper blood supply, without infarct. tie expressed the opinion that the plaintiff would never be able to resume heavy lifting or to exert himself and more specifically, he would not be able to perform the work of a journeyman carpenter.
The plaintiff also offered the testimony of Dr. Albert L. Hyman, the only physician who qualified as an expert in the subspecialty of cardiology. Dr. Hyman testified at length with respect to the changes in the plaintiff’s heart which were clearly disclosed by the serial electrocardiograms taken the day after the accident; however, his testimony can best be appreciated by the following extract therefrom:
“Q Now, were you able to form an opinion as to the causation of this man’s problem?
A I would say that it is most likely that the cause of his difficulty at that *342 time was related to the unusual amount of exertion.
Q What is your reasoning for your opinion, Dr. Hyman?
A Well, there are several things that I think lead one to believe this. The first is that a man who apparently had no history of heart disease, who lifts a heavy object, complains of chest pain radiating down the arm, who is admitted to a hospital for a possible heart attack, possible myocardial infarction, whose serial electrocardiogram at that time shows not only disease but change in them during the course of the observation in hospital, who is discharged from hospital by his physician on coronary dilative drugs and who complains of angina since that time, these are the major reasons that lead me to believe it.”
Two other internists appeared and testified on behalf of the plaintiff and they, in substance, expressed the same opinion. No useful purpose would be served by a repetition thereof.
On the other hand, the defendant offered the testimony of Drs. Stanton Middleton and Sam Nadler who endeavored to convince the lower court that the only injuries incurred by the plaintiff on June 4th were a sprained chest muscle together with a possible fracture of a rib. However, an analysis of their testimony in most instances fully substantiates the expertize of the plaintiff’s physicians.
In short, the preponderance of the evidence discloses that the plaintiff was an active laborer until the occurrence of the accident, and thereafter, he was unable to resume substantial physical employment. Furthermore, the medical evidence adduced herein clearly establishes that the lifting episode resulted in some damage to the heart or the vessels immediately attendant thereto, probably in the form of an occlusion. This occlusion apparently resulted in ischemia but did not produce an infarction. Nevertheless, the plaintiff was left with a condition designated as angina pectoris, which severely limited his ability to engage in any strenuous effort whatsoever.
 A civil suit is not a scientific investigation, and the Court in making its judgment predicates its evaluation of the evidence upon what reasonably and probably occurred. In this case, the whole tenor of the expertize contained in the record leads us to the inevitable conclusion that the plaintiff’s heart or parts thereof suffered damage resulting from the accident of June 4, 1964.
The defendant argues that compensation is not due because the plaintiff apparently had an arterioschlerotic vascular condition which preexisted the accident. However, our jurisprudence uniformly recognizes that benefits are due in compensation cases involving heart conditions which result in disability or death, whether or not the condition is preexisting when caused, precipitated, or accelerated by even the usual and customary activities, exertions and other factors directly connected with the employment.[1]
Finally, the plaintiff insists that he is entitled to penalties and attorney’s fees for arbitrary refusal of the defendant to pay compensation after June 18, 1964. In view of what we have said hereinabove, there quite obviously existed a very substantial dispute between the plaintiff and the compensation insurer relative to the connection between the accident and the heart condition which, of course, does preclude the imposition of penalties since the defendant’s refusal to pay compensation was not arid *343 -trary, capricious, or without probable cause within the meaning of R.S. 22:658 or of ihe jurisprudence interpretative thereof.
For the foregoing reasons, the judgment of the lower court is affirmed.
The defendants are to pay all costs incurred herein.
Affirmed.

. See Franklin v. Old Colony Insurance Company, 150 So.2d 892 (1963); Andrepont v. Calcasieu Paper Company, 131 So.2d 585 (La.App.1901); Talbot v. Trinity Universal Insurance Company, 99 So. 2d 811 (La.App. 1957); Hemphill v. Tremont Lumber Co., 209 La. 885, 25 So. 2d 625 (1946).