285 So.2d 276 (1973)
Elizabeth Lea CLEMENT, widow of Philip R. MUSSMAN
v.
FAUCHEUX CHEVROLET COMPANY, INC., and Liberty Mutual Insurance Company.
No. 5902.
Court of Appeal of Louisiana, Fourth Circuit.
November 2, 1973.
Rehearing Denied November 30, 1973.
Writ Refused February 1, 1974.
*277 Daniel E. Becnel, Jr., Reserve, for plaintiff-appellee.
Stephen L. Huber, New Orleans, for defendants-appellants.
Before SAMUEL, STOULIG, and SCHOTT, JJ.
STOULIG, Judge.
Plaintiff, Mrs. Elizabeth Clement Mussman, filed suit against the employer, Faucheux Chevrolet Company, Inc., and its workmen's compensation insurer, Liberty Mutual Insurance Company, for death and funeral benefits provided by the Workmen's Compensation Law,[1] alleging her husband suffered a fatal "coronary occlusion and/or myocardial infarction" precipitated by job-connected activities. Acting in his capacity as sales manager for Faucheux Chevrolet, Mr. Mussman died while driving from the automobile dealership to an attorney's office for the purpose of having an automobile title notarized. Plaintiff further pleaded defendants acted in an arbitrary and capricious manner in denying her claim and prayed for statutory penalties and attorney's fees.[2] Defendants answered with a general denial.
After a trial on the merits, plaintiff was awarded $24,000, payable at the rate of $49 per week for a period of 500 weeks, and $1,000 funeral benefits. Penalties and attorney's fees were disallowed. The defendants have appealed.
At the outset it should be observed that all of the evidence was adduced by the appellee and was uncontroverted. It therefore follows that our conclusions of fact are based upon this testimony furnished by the plaintiff alone. Further, it is undisputed that Mussman's employment is properly classified as a hazardous occupation within the contemplation of the workmen's compensation statute and the jurisprudence interpretative thereof. It is also conceded his death occurred during the course and scope of his employment.
The sole issue is whether a compensable industrial accident did occur.
Mussman had been employed by Faucheux for 22 years. At the time of his death, his duties as sales manager included keeping the books, ordering cars and accessories from the factory, and taking inventory of new and used cars. On rare occasions he would supervise the unloading of incoming vehicles. Apparently his working *278 environment was ideal and his duties were sedentary in character. He worked a full day from Monday to Friday and a few hours on Saturday morning. Frequently he worked on the company books at night at his home.
Mussman died on May 20, 1972a Saturday. On the morning of his death, in conversations with his wife, a neighbor and several co-workers, he said nothing about feeling pain or any other symptom that might be indicative of an impending coronary and he appeared to be in good spirits. Although he did remark to one of the Faucheux salesmen, "I'm just not up to it this morning * * * I just don't feel like working," we do not read into this comment a complaint of illness.
He reported for work before 8 a. m. At approximately 8:45 a. m., he left the office to have a car title notarized. While en route and some three blocks from his office, Mussman's automobile left the road and traveled 30 to 40 feet along the bordering grassy embankment before stopping. He was found within an hour. A police officer called to investigate found Mussman slumped over the wheel with the motor still running.
Dr. August Nobile, the parish coroner, pronounced him dead at the scene. He testified there was no evidence of traumatic injury from accidental causes. Based upon information he gathered from several individuals (whom he could not identify at the time of trial) that the decedent had complained earlier of chest pains, Dr. Nobile classified his death as a "case of cardiac arrest due to coronary thrombosis." No autopsy was performed. The coroner termed his diagnosis as "an educated guess." Since all of his co-workers testified he seemed to be in good health and had made no complaint of pain, Dr. Nobile was asked if he would attribute death to the same cause if Mussman had not in fact complained of chest pains earlier. The coroner said it could have been attributed to another cause; however, he pointed out it is possible for a coronary thrombosis to cause death without the victim previously experiencing pain. Thus his testimony fails to establish Mussman died of a cardiovascular disease because the affirmative evidence of the Faucheux employees negates the predicate upon which Dr. Nobile based his diagnosis. Counsel for appellee candidly stated in his brief: "It should also be noted that the exact cause of death was never determined."
The testimony of Dr. Carl Poche, the Mussman family doctor, added nothing to support death was attributable to a heart condition. He had treated Mussman for minor aliments unrelated to cardiac problems over the last ten years. In 1970, upon finding an elevated blood pressure, he prescribed a drug for Mussman that brought the pressure down within a year. Dr. Poche stated the presence of high blood pressure alone does not establish the existence of cardiovascular disease.
Appellee's claim is based on the theory Mussman's work activity either caused a coronary or aggravated a pre-existing cardiac condition to the point where he suffered a fatal attack. To prove aggravation, counsel for appellee questioned the medical experts as to what heart conditions could be present in a man having high blood pressure and further requested them to speculate as to what activities might precipitate a fatal attack. Both stated unequivocally they did not think driving an automobile or processing papers was sufficiently stressful to precipitate a fatal heart attack. Thus, even were we to assume arguendo that Mussman died from cardiovascular causes, there is no evidence in the record to relate the fatal incident to any work-connected activity.
In reaching this result, we are mindful of the recent jurisprudence wherein our courts have recognized the difficulty confronting a compensation claimant in proving causal connexity between cardiovascular accidents and job-related activities. This is so because medical science cannot *279 always pinpoint cause, time of onset or the precise factor accelerating or aggravating a pre-existing condition. See Bertrand v. Coal Operators Casualty Company, 253 La. 1115, 221 So.2d 816 (1969). And where the workman dies, the plaintiff's problem increases because the victim is unable to relate to medical experts what symptoms he felt, if any, prior to death.
While we recognize the difficulties the plaintiff claiming death benefits faces in reconstructing for the court the decedent's symptoms prior to death and relating them to his work activity, we cannot relieve such claimant of the burden of proving his or her case by a reasonable preponderance of the evidence. It is still incumbent on the plaintiff to prove the decedent's employment activity either caused the fatal coronary or precipitated the assault on an already diseased heart that resulted in death.
We agree with plaintiff's contention that cardiovascular accidents occurring while the workman is performing customary duties[3] involving physical exertion[4] or mental stress[5] are compensable. But a prerequisite to recovery is relating the death-dealing or disabling attack to a work-connected activity.
As we have previously stated, the record fails to establish the cause of death. However, if we assume it was cardiovascular in nature, plaintiff still cannot prevail. Her medical experts would not state it was probable that his work activity on the morning of his death could have been the factor that precipitated a heart attack. A fair reading of their testimony leads us to conclude it is improbable that driving an automobile or processing papers could bring on the incident. Furthermore, from the record it affirmatively appears that the decedent was not engaged in strenuous activities or subject to an unusual working environment of heat, cold, or stress, all of which are conducive to provoking a cardiac accident.
For these reasons, the judgment appealed from is reversed and it is now ordered, adjudged and decreed that plaintiff's suit be dismissed. Plaintiff is to pay all costs of this appeal.
Reversed.
NOTES
[1] LSA-R.S. 23:1231 and R.S. 23:1210.
[2] LSA-R.S. 22:658.
[3] Brown v. Kaiser Aluminum & Chemical Corporation, 250 So.2d 99 (La.App.4th Cir. 1971).
[4] Dusang v. Liberty Mutual Insurance Company, 195 So.2d 340 (La.App.4th Cir. 1967).
[5] Ferguson v. HDE, Inc., 270 So.2d 867 (La.1972).