295 So.2d 589 (1974)
Alex VAN DYKE, Plaintiff-Appellant,
v.
COLFAX CREOSOTING COMPANY et al., Defendant-Appellee.
No. 4524.
Court of Appeal of Louisiana, Third Circuit.
May 24, 1974.
Rehearing Denied June 26, 1974.
Writ Refused September 20, 1974.
*590 Gold, Hall, Hammill & Little by James D. Davis, Alexandria, for defendant-appellee.
Eugene P. Cicardo, Garrett & Ryland by Donald M. Garrett, Alexandria, for plaintiff-appellant.
Before FRUGÉ, HOOD and DOMENGEAUX, JJ.
FRUGÉ, Judge.
This is an action seeking to recover benefits under Louisiana Workmen's Compensation Law. Plaintiff, Alex Van Dyke, instituted suit on June 12, 1973, against Colfax Creosoting Company and Roy O. Martin Lumber Company, Inc., asserting total and permanent disability resulting from a heart condition arising out of an accident within the course and scope of his employment. Judgment was rendered in favor of plaintiff and against defendant, Colfax Creosoting Company, for workmen's compensation benefits and medical and hospital expenses. Plaintiff's demands against Roy O. Martin Lumber Company, Inc., were rejected. From this determination, Colfax Creosoting Company has appealed. We affirm.
Defendant-appellee, Colfax Creosoting Company, asserts error on the part of the trial court in finding that an accident did occur within the meaning of La.R.S. 23:1021, and, secondly, in attributing the plaintiff's current disability to that accident. Plaintiff-appellant answered the appeal and asserted error in the trial court's rejection of his demand for penalties and attorney's fees, predicated upon defendant-appellant's alleged arbitrary and capricious failure to pay workmen's compensation benefits. By answer, plaintiff has also requested an amendment of the judgment to provide for all medical expenses, past and future, which are legally recoverable.
The pertinent facts are as follows. Plaintiff was employed by defendant, Colfax Creosoting Company, as a heavy Diesel truck driver for approximately seven and one-half years prior to the alleged on-set of his disability in December of 1972. His employment duties necessitated travel in both interstate and intrastate commerce. On the evening of December 12, 1972, plaintiff left Pineville, Louisiana, with a load of cross-ties to be delivered to a construction site in Artesia, Mississippi. He was unaccompanied on this trip of some 754 miles round trip.
The cross-ties were actually unloaded at the construction site in Mississippi by construction workers. Following the unloading, plaintiff had to secure stakes on the truck's trailer with a chain and, in doing so, utilized a "cheater pipe" in order to increase his leverage. While binding the stakes he experienced a shortness of breath, which required discontinuance of his efforts until he had sufficient strength to complete the job. Having bound the stakes, he commenced homeward and experienced a second episode of shortness of breath. At this time, he also had pain in his side. Both of these episodes required 15 to 20 minutes each in order for plaintiff to regain his strength and continue.
The following morning, December 14, plaintiff transported a truckload of telephone *591 poles to Lake Charles, Louisiana, where he was required to unload these poles himself upon arrival. During this strenuous unloading procedure, undertaken without any help, he again experienced acute shortness of breath and a "pulling" feeling in his chest, and was required to cease his exertions until he recovered his breath. He was bothered by this ailment all the way back to Pineville.
Upon arriving at the Colfax Creosoting plant in Pineville, he reported in sick and notified the supervisor, a Mr. Windham, that he would have to see a doctor. Plaintiff went home and remained there over the weekend, seeking medical attention on December 18, 1972, from Dr. Ronald Tischler. Plaintiff was immediately hospitalized at St. Francis Cabrini Hospital in Alexandria, where it was determined that he was suffering from congestive heart failure. His symptoms, including pedal edema, pulmonary congestion, and shortness of breath, were consistent with congestive heart failure. Plaintiff was also found to be suffering from diabetes and arteriosclerotic heart disease.
On December 23, 1972, plaintiff was discharged from the hospital and subsequently was examined by Dr. Tischler twice in January, once in February, once in March, and once in April of 1973. The April visit revealed that plaintiff again suffered congestive heart failure, despite having taken the medication prescribed. The doctor, accordingly, saw fit to increase plaintiff's medication. On May 17, 1973, plaintiff was again examined, his lack of improvement on this occasion prompting his admittance to Rapides General Hospital. During the period of time between hospitalizations, plaintiff was deemed disabled from doing any physical labor.
Dr. Alphonse L. Drerup, an internist specializing in cardiology, conducted an electrocardiogram at the time of plaintiff's May hospitalization and determined that plaintiff suffered from congestive heart failure, and had also previously sustained a heart attack. It was his opinion that the heart attack occurred between the hospitalization in December, 1972, and the hospitalization in May, 1973.
Plaintiff was discharged from Rapides General Hospital May 22, 1973, and at this time his heart failure was controlled and considered compensated. It was not felt that he was physically fit to perform strenuous manual labor of the sort required by his former employment.
In June, 1973, plaintiff was examined by Dr. Rufus H. Craig, an internist principally interested in heart disease, who was of the opinion that plaintiff suffered from congestive heart failure at that time, and also found evidence of the previous heart attack noted by Dr. Drerup in the foregoing. Without question, all medical experts testified that plaintiff is permanently disabled.
The following excerpts from the written reasons of the trial court are well supported by the record and, with slight revision, are adopted as our own.
"There is no question that this plaintiff is permanently disabled. The only issue is whether his disability is sufficiently related to his employment to allow him to recover workmen's compensation benefits. There seems to be little question that the physical exertions on December 13, 1972 and December 15, 1972 [December 14, 1972], precipitated the first bout of heart failure which resulted in the plaintiff's hospitalization on December 18, 1972. This condition was apparently controlled by medication and rest until sometime in April, 1973. In April, Dr. Tischler found that he again showed symptoms of being in heart failure and increased his medication. In May, 1973 his condition had worsened sufficiently to require hospitalization. He recovered sufficiently to be discharged from the hospital on May 22, but was again suffering heart failure when examined by Dr. Craig in June of 1973.

*592 "In Bertrand v. Coal Operators Casualty Company, 253 La. 1115, 221 So.2d 816 (1968), our Supreme Court held, on re-hearing, that the legal criterion in compensation cases involving heart disease `should be whether the accident caused a change in the employee's physical condition which is disabling, and not whether the accident changed the diseased organ of the employee'. The Court went on to point out that:
'The residual condition from an accidental injury which substantially increases the possibility of recurrence of a disabling or death-dealing episode is legally disabling and is compensable under the Workmen's Compensation Law.'
"In this case plaintiff's physical exertions during the course and scope of his employment precipitated an episode of heart failure in December. He has been permanently disabled since that time. Here as in Bertrand the plaintiff has established an accident and his inability to return to work. Here as in Bertrand medical opinion recognizes that an accident (exertion) caused some kind of injury (heart failure), that the plaintiff is unable to return to work because of disability, and that the accident manifested the disability. Therefore, this Court must conclude that the accident has caused the termination of employment because of disability. See also: Sharp v. Esso Standard Oil Company, 72 So.2d 601 (La.App. 1st Cir. 1954); Weber v. McLean Trucking Inc., 265 So.2d 628 (La. App. 3rd Cir. 1972); and Porter v. Augenstein Construction Company, 280 So. 2d 861 (La.App. 3rd Cir. 1973)."
Also, see Sherman v. Southern Scrap Material Company, Ltd., 284 So.2d 71 (La. App. 4th Cir. 1973), and Babin v. Highlands Insurance Company, 290 So.2d 720 (La.App. 1st Cir. 1974), for recent applications of the Bertrand criterion of causality.
Plaintiff-appellee has claimed attorney's fees and penalties, predicated upon an asserted arbitrary and capricious failure of the defendant to pay the compensation benefits due and owing. La.R.S. 23:1201.2. Several communications between counsel, as well as doctors' reports and a defendant's exhibit #8 (a hospitalization insurance claim in which plaintiff noted this hospitalization was not related to any employment disability), are before us for our consideration on this issue. The time at which this hospitalization claim was provided to the defendant company was apparently not clear to the trial court. The claim was admitted in evidence, with the question of the time of its submission to defendant going to the weight which would be afforded it in relation to the issue of attorney's fees and penalties. The trial court evidently found it to have been received prior to the claim asserted by the plaintiff. On the record before us, we are unable to conclude that the trial court erred in its rejection of the attorney's fees and penalties in this matter. There was apparently a legitimate belief on the part of the defendant that the plaintiff's disability was unrelated to his employment.
The trial court in its written reasons for judgment provided for the recovery of legally recoverable medical expenses, past and future, while the actual judgment prepared by plaintiff awarded only those medical expenses which had been incurred at the time of trial. Plaintiff, by answer, seeks to amend the judgment in order to recover alleged future medical expenses. Such an amendment is unwarranted. The jurisprudence is clear that future medical expenses are not allowed in workmen's compensation cases unless proven at trial. See Johnson v. Cajun Enterprises et al., 293 So.2d 617 (La.App. 3rd Cir. 1974) and Igues v. Travelers Ins. Co., 237 So.2d 895 (La.App. 3rd Cir. 1970). At trial of this matter, no proof of future medical expenses was adduced, and plaintiff's prayer *593 for amendment must, therefore, be rejected.[1]
For the above and foregoing reasons, the judgment of the trial court is affirmed. Appellant is to pay all costs of this appeal.
Affirmed.
NOTES
[1] Plaintiff's right to claim future medical expenses need not be specifically reserved in the judgment. The right to such a claim is reserved and assertable, if and when future medical expenses are incurred. Welch v. Clemons Bros. Lumber Co., 262 So.2d 79 (La.App.1st Cir. 1972), and Johnson, supra.