340 So.2d 1076 (1976)
Martha Maxine LAY
v.
ALLIED CHEMICAL CORPORATION and the Travelers Insurance Company.
No. 11024.
Court of Appeal of Louisiana, First Circuit.
December 20, 1976.
Robert L. Kleinpeter, Baton Rouge, of counsel for plaintiff-appellee.
Don L. Broussard, Lafayette, of counsel for defendant-appellants.
*1077 Before SARTAIN, COVINGTON and LOTTINGER, JJ.
COVINGTON, Judge:
This is an action for workmen's compensation death benefits filed by the surviving widow, Martha Maxine Lay, of a deceased employee, William E. Lay, against his employer, Allied Chemical Corporation, and its insurer, The Travelers Insurance Company, alleging that her husband, while performing his work as a senior operating engineer in the employer's chemical plant, suffered a fatal heart attack after having worked for about four hours. The petitioner also seeks funeral expenses, statutory penalties and attorney's fees.
The trial court awarded judgment in favor of the plaintiff-appellee and against the defendant-appellants, awarding her $65.00 per week for 500 weeks beginning March 22, 1974, plus 7% Per annum interest on each past due payment from its due date until paid, together with $1,000.00 for funeral expenses and all costs. It further awarded her a judgment against the insurer for penalties in the amount of 12% on all past due compensation from March 22, 1974, and $2,500.00 attorney's fees.
On appeal the appellants contend that the trial court erred in finding a causal relationship between the heart attack and the decedent's job, and that it also erred in awarding penalties and attorney's fees.
The facts giving rise to this claim are as follows: William E. Lay, who was 43 years old, had for 18 years been employed by Allied Chemical Corporation, which was engaged in the business of developing and processing chemicals in the Baton Rouge area. The employee's position of employment was senior engineer, and he was working as a relief operator at the time of his death. As a senior operator, the employee usually worked straight days; however, on the day of his death he was working a 12-hour day because he was covering for another employee on an earlier shift.
On March 22, 1974, William E. Lay arrived at the chemical plant about 3:00 a.m. His job on this particular day was to take a condensate header, which needed minor repairs, out of service, as a part of the usual periodic procedure in this type of operation. This routine operation, as far as the employee was concerned, consisted mainly of turning off certain valves on different levels of the operating room. In performing this operation it was necessary to open and close valves and to climb up and down stairs.
What Mr. Lay did on the date he died is best described by Harold G. Bates, who was present at the time and now performs the same duties that Mr. Lay performed, as follows:
"Q Did you know Mr. William E. Lay?
A Yes, sir.
Q How long had you known Mr. Lay?
A Since I came to work at the plant in '57.
Q What was his job title as of March 22, 1974?
A Senior operating engineer relief.
Q And that's the position you have now?
A Yes, sir.
Q Now, as senior operating engineer relief, what are the duties of the individual that fills that job?
A He normally works straight days and he relieves one day a week on five jobs, five units.
Q Does that require climbing and so forth up and down units?
A Yes, sir.
Q Now, when you have a turnaround, does that require extra work on the part of the operator? I think they were turning off a condensor head or something that day.
A Yes, sir.
Q And does it require that you go up and down stairs between the different floors?
A Yes, sir.
Q Now, were you present onor had you seen Mr. Lay on the day of his heart attack?
A Yes, sir, early that morning.

*1078 Q And do you know if he was on the unit performing his duties?
A Yes, sir, he was outside.
Q Now, you say outside. He was not in the control room, is that right?
A I saw him briefly before he went outside.
Q Now, did he have any complaints before he went out?
A No, sir.
Q Did you seen him anytime later, Mr. Bates?
A I saw him when he came back in.
Q And was he complaining at that time?
A Not verbally. He acted like he was in pain when he came through the door.
Q What time did you come to work that morning?
A Approximately six-thirty. Between six-thirty and seven.
Q And was Mr. Lay on the job when you got there?
A Yes, sir.
Q Now, from your observations of Mr. Lay and working with him as a fellow employee, was he a hard, conscientious worker?
A Very dedicated individual.
Q When he was on the job, did he tend to the job he had to do?
A Yes, sir.
Q And when you are performing these turnarounds such as he was doing on this day, does that require extra effort on your part as a relief operator?
A Yes, sir.
Q In other words, it's not like a usual day. It requires more from you, is that right?
A Well, a usual day, on days anyway, you have quite a bit of turnaround material going down, units going down, and parts going up. This is usually the time for the unit to be worked on so this was nothing abnormal.
Q But it did require the turning of valves and the going up and down stairs, did it not?
A Yes, sir.
Q Was there quite a bit of walking, going up and down?
A Some days, yes, sir.
Q Mr. Bates, in connection with these valves, would some of them be on the second deck and some of them on what you call the floor deck?
A Yes, sir.
Q Would some of them require reaching and some require stooping?
A (The witness did not respond.)
Q In other words, were they at different levels?
A Only required stooping. Most of them would be at waist level.
Q And it did require physical exertion to open and close these valves and to walk up and down steps, didn't it?
A Yes, sir."
After working for about four hours, around 7:30 a.m. the employee came into the office of his immediate supervisor, complaining of severe chest pains. First aid was administered and the employee was taken to the hospital, where he died at 8:50 a.m. Dr. J. B. Peltier, a physician specializing in emergency medicine who was on duty at the time, stated the immediate cause of death was acute myocardial infarction, a heart attack. The employee had no medical history of a heart condition.
The primary issue before this Court is whether the employee sustained a "compensable accident" within the meaning of the Workmen's Compensation Law, so as to entitle the widow to recover benefits as a result of her husband's fatal heart attack. We must give a liberal interpretation, in favor of the employee, to the terms "accident" and "injury" in LSA-R.S. 23:1021(1) and (7); Geist v. Martin Decker Corporation, 313 So.2d 1 (La.App. 1 Cir. 1975).
It is pointed out in the case of Weber v. McLean Trucking Company, 265 So.2d 628, 634 (La.App. 3 Cir. 1972), that benefits are *1079 due under the Louisiana Workmen's Compensation Law in cases "involving heart conditions resulting in disability or death, whether or not the condition is preexisting, when caused, precipitated, or accelerated by even the usual and customary activities, exertions and other factors directly connected with the employment." Also, see Vicknair v. Avondale Shipyards, Inc., 220 So.2d 580, 582 (La.App. 4 Cir. 1969), writ den. 254 La. 285, 223 So.2d 409.
In Weber the employee was a heavy truck driver who had a heart condition which had first manifested itself some years earlier. Immediately prior to his death, the employee had driven a heavy tractor-trailer unit all day in hot weather over one of the most difficult routes in the South. Upon arriving at home, the employee complained of chest pains and extreme fatigue. After resting briefly, the employee died suddenly from a heart attack while present at the loading of some cattle for a rodeo. The court found the cause of death to have been work-related even though death occurred off the job; that is to say, the court found causal connexity between the decedent's work and his subsequent fatal heart attack.
In heart condition cases, such as this, the claimant need only prove the injury or death is causally connected with the work effort of the employee in performing his customary duties. The employee need not prove that he suffered a traumatic injury by external violence in order to be considered an industrial casualty. See Brown v. Kaiser Aluminum & Chemical Corporation, 250 So.2d 99, 101 (La.App. 4 Cir. 1971), writ den. 259 La. 807, 253 So.2d 66.
In Brown the court observed:
"It is sufficient to constitute a compensable accident involving heart diseases within the meaning of the Workmen's Compensation Statutes when the work effort and the exertion of the employee in discharging his customary duties causes the diseased organ to collapse or its function to become so impaired as to result in disability or death."
The applicable rule was succinctly stated in Leleux v. Lumbermen's Mutual Insurance Company, 318 So.2d 15, 17 (La. 1975), as follows:
"It is necessary only that the death or disability be precipitated by the usual actions, exertions, and conditions of the employment."
The evidence convinces us that prior to the date of his death, the employee enjoyed good health and actively engaged in strenuous physical labor. The evidence also is convincing that the employee suffered a heart attack on the job, the onset of which was sudden, after having been engaged in activities involving exertive efforts on his part, such as climbing stairs and turning valves.
Therefore, the contention of the appellants that the fatal heart attack in the instant case did not come within the meanings of "injury" and "accident" as required by the Workmen's Compensation Law is without merit. The case of Clement v. Faucheux Chevrolet Company, 285 So.2d 276 (La.App. 4 Cir. 1973), relied upon by the appellants, is inapposite. In that case the evidence failed to establish the cause of death, while in the instant case the evidence shows unquestionably that the work activities engaged in by the employee caused his fatal heart attack. In the Clement case, the employee, a sales manager, died while driving his automobile from his office to an attorney's office to have an automobile title notarized. The cause of death was admittedly "never determined."
In the instant case the employee was apparently feeling well, performing his usual duties, climbing stairs and turning valves in the course and scope of his employment, when he suddenly and unexpectedly suffered a fatal heart attack. These facts clearly place this case within the jurisprudential meaning of "accidental injury." See Ferguson v. HDE, Inc., 270 So.2d 867, 869 (La.1972). Further, the causal relation may be inferred when there is proof of an accident during the course of employment and a subsequent disability or death with *1080 no intervening cause; Leleux v. Lumbermen's Mutual Insurance Company, supra.
Having concluded that there is liability on the part of the employer and insurer, we must now determine whether the insurer is liable for penalties, interest and attorney's fees for failure to pay compensation benefits.
We have examined the record and find that the evidence amply supports the trial court's award of those items. Mr. Donald Deshotels, the workmen's compensation supervisor who handled this particular claim, had information that revealed to him that the employer had suffered a heart attack on the job and that the heart attack came on the employee suddenly. Mr. Deshotels testified that the only thing he had to go on initially was the emergency room report. About one year after suit was filed, he requested additional medical information. Mr. Deshotels also testified that he did not even consider the legal authorities, i.e., the recent law dealing with heart cases, which the claimant's counsel had sent to him, because, as Mr. Deshotels explained it, "we didn't research the matter because it's not necessary that you know the law because the law changes every day." While we do not expect insurance claims adjusters to be lawyers, we do expect them to know the applicable law in the cases they are assigned for handling. It is their obligation to keep abreast of the law as it affects their cases. It is their duty to seek legal opinions from the insurer's counsel in order to understand the applicable law involved. An adjuster can not just out-of-hand reject a claim. To do so is the "arbitrary, capricious or without probable cause" contemplated by the penalty provisions of the law, and requires the courts to assess penalties, interest and attorney's fees against the insurer.
We find that there was no basis for refusal to pay this claim; consequently, the insurer, The Travelers Insurance Company, must suffer the statutory penalty for its arbitrary refusal to pay. Eaton v. General Accident Group, 292 So.2d 773 (La.App. 4 Cir. 1974); Hills v. Travelers Insurance Co., 250 So.2d 551 (La.App. 1 Cir. 1971).
The instant case is unlike Van Dyke v. Colfax Creosoting Company, 295 So.2d 589, 592 (La.App. 3 Cir. 1974), writ den. 300 So.2d 182 (La.) cited by appellants, where there was "a legitimate belief" on the part of the insurer that the employee's disability was unrelated to his employment. In that case there was a reasonable question of causation.
For the reasons assigned, the judgment appealed from is affirmed at appellants' costs.
AFFIRMED.