290 So.2d 720 (1974)
Irvin BABIN, Plaintiff-Appellee,
v.
HIGHLANDS INSURANCE COMPANY and Delta Drilling Company, Defendants-Appellants.
No. 9675.
Court of Appeal of Louisiana, First Circuit.
February 11, 1974.
Rehearing Denied March 18, 1974.
*721 John J. Cooper, New Orleans, for defendants-appellants.
Charles Hanemann, Houma, for plaintiff-appellee.
Before SARTAIN, TUCKER[*] and WATSON, JJ.
SARTAIN, Judge.
This workmen's compensation suit arises out of an alleged accident on January 4, 1972 in which plaintiff claims to have sustained a disabling heart attack or severe chest pains brought on by the performance of his duties in the course and scope of his employment as a roughneck for defendantDelta Drilling Company. Defendants have appealed from a judgment in favor of plaintiff awarding full workmen's compensation benefits for total and permanent disability at the rate of $49.00 per week for five hundred weeks and awarding $1,777.30 for medical expenses.
Defendants contend that the trial court erred in holding that plaintiff suffered an accident while in the course and scope of his employment on January 4, 1972. Defendants also contend that the trial court erred in finding that plaintiff had a disabling coronary artery disease and in giving greater weight to the testimony of plaintiff's treating physician than to the testimony and evidence given by specialists in the field. Thus, the issues presented by this appeal are: (1) whether plaintiff did in fact suffer an accident on January 4, 1972; and (2) whether plaintiff was disabled as a result thereof.
Plaintiff, forty-seven years old at the time of the alleged accident, testified that he had been working in the oil fields as a roughneck for about twenty-five years. On January 4, 1972 he was working on Delta Drilling Company Rig Number 31 in St. Charles Parish, Louisiana, as a roughneck and motorman. On that day plaintiff and the rest of his crew had been working for nearly an hour to break a cement head. Plaintiff stated that this job usually can be done in just a few minutes and he and his crew were under pressure to complete the task because they were getting behind schedule. Plaintiff testified that he hurried downstairs to get some wrenches and hurried upstairs on the rig. At the top of the stairs plaintiff stated that he experienced severe chest pain, weakness and lost consciousness. When he came to and regained his strength, he told his driller, a Mr. B. J. LeBoeuf, what had happened and asked his tool pusher, a Mr. L. A. Maten, to drive him home. Plaintiff stated that he continued to suffer chest pains during the ride home and all through that night.
The next morning plaintiff saw Dr. William Marmande, a general practitioner in Houma, Louisiana. Dr. Marmande hospitalized plaintiff in Terrebonne General Hospital where he spent two days in intensive care and an additional twelve days in a hospital ward. After being released *722 from the hospital plaintiff stated that he stayed home recuperating throughout the months of January and February, but returned to work in late March on light duty as a watchman on the rig. Plaintiff continued his light duty employment as a watchman and then as a cleanup man on the rig until he was released by the company in July of 1972. Plaintiff stated that throughout this period of time he continued to have intermittent chest pains and was hospitalized again in July of 1972 following another attack of severe chest pains similar to his previous attack of January 4, 1972.
Plaintiff testified that he still experiences chest pains on physical exertion. He stated that he takes nitroglycerine pills prescribed by Dr. Marmande and these relieve his pain. However, he has not attempted to return to work since his second hospitalization in July of 1972 and his physical activities have been limited to short walks each day.
Dr. William Marmande testified that he first saw plaintiff on January 5, 1972 and ordered his hospitalization because of the possibility he might be experiencing a myocardial infarct. Subsequent tests and observations revealed that plaintiff had not experienced an infarct but Dr. Marmande concluded that he had coronary artery heart disease with angina pectoris. Dr. Marmande stated that the strenuous physical exertion accompanied with nervous agitation described by plaintiff as his activities prior to the onset of the chest pains on January 4, 1972, were consistent with the onset of angina in a patient who had underlying arteriosclerosis.
Defendants contend that plaintiff has failed to establish that his chest pains or angina first occurred on the date of the alleged accident, January 4, 1972. Defendants argue that plaintiff gave conflicting information concerning the onset of his chest pains. Defendants also argue that plaintiff's testimony is impeached and his credibility thereby impaired by his failure to indicate on his employment physical examination record information concerning prior heart trouble.
Defendants base their contention that the chest pains and angina actually occurred at plaintiff's home on January 3, 1972 rather than at work on January 4, 1972 on the history given by plaintiff to Dr. Jorge Z. Martinez, a cardiologist at the Delgado College Rehabilitation Center in New Orleans, on May 11, 1972. Plaintiff had been referred to the center for cardiac evaluation and Dr. Martinez stated in his report that plaintiff told him he had begun to feel bad, dizzy and weak with some pain in his chest on the third of January. Defendants point to this statement as indicating that the onset of plaintiff's illness occurred at home rather than on the job.
Plaintiff freely admitted that he was feeling a little bad on January 3, 1972 but that he felt it was trivial and he did not stay home from work the next day nor did he reduce his normal activities in any way. Plaintiff stated that it was during the course of his physical labors on the job that he was stricken with the severe chest pains, weakness and loss of consciousness on January 4, 1972.
Defendants also contend that plaintiff's credibility is impeached due to his denial of prior heart trouble on his employment application. Plaintiff testified that at the age of twenty-eight, while visiting his brother in a hospital in Lake Charles, Louisiana, he blacked out for a few minutes. He was examined by a physician there who told him he could return to Houma. Plaintiff was not hospitalized but stated that he felt he had experienced a mild stroke. Plaintiff stated that he did tell the physician who examined him for his employment application about this prior incident and that it was the doctor who considered it too trivial to note.
Defendants also sought to establish that plaintiff had suffered from longstanding anxiety problems. Plaintiff denied this *723 and stated that he had been hospitalized for some three months during World War II for nervous tension and battle fatigue and he had received some disability benefits which were discontinued over eighteen years ago at plaintiff's request.
The trial court accepted plaintiff's testimony concerning the incident on January 4, 1972 and held that plaintiff had sustained a compensable injury on that date while in the course and scope of his employment. With this conclusion we agree.
A claim for workmen's compensation benefits may be sustained upon a plaintiff's uncorroborated testimony as to the occurrence of the accident where his testimony is corroborated by the surrounding circumstances and is not discredited. Sensley v. Aetna Casualty & Surety Company, 269 So.2d 473 (1st La.App. 1972). It has also been held that inconsistencies in a compensation claimant's statements are not per se sufficient to warrant the conclusion that the trial court committed manifest error in accepting his testimony as true. Webre v. Service Painting Company of Beaumont, 252 So.2d 675 (1st La.App. 1971).
The above pointed out inconsistencies in plaintiff's testimony are not of sufficient degree to compel rejection of his testimony concerning the onset of his injury nor do they compel reversal of the trial court's acceptance of that testimony.
Defendants also contend that plaintiff's failure to call his co-employees, the driller and tool pusher, to corroborate his version of the incident resulted in his failing to carry his burden of proving that the severe chest pains occurred on the job after strenuous activity. As pointed out above, a claimant's testimony alone can sustain this burden of proof.
We find more serious the contention of defendant that plaintiff was not disabled as a result of this incident. Of necessity the resolution of this issue must be found in the medical testimony concerning plaintiff's condition.
Dr. William Marmande was plaintiff's treating physician and plaintiff was still under his care at the time of the trial. Dr. Marmande stated that it was his initial impression on January 5, 1972, that plaintiff had sustained or was experiencing a myocardial infarct. He hospitalized plaintiff in intensive care for two days and for an additional twelve days thereafter in a ward. Subsequent tests and observations showed that plaintiff had not experienced an infarct but was instead suffering from coronary artery disease with angina and angina pectoris. Dr. Marmande stated that this diagnosis and the onset of angina on January 4, 1972 was consistent with the work situation of January 4, 1972 related by the plaintiff. According to Dr. Marmande the first attack of severe chest pain was directly and immediately associated with strenuous work activity and that this is highly typical of arteriosclerosis with angina. Dr. Marmande testified that the angina is really the symptom of the disease and while angina can be brought on by other causes, such as chronic anxiety and hyperventilation, about ninety percent of the time it is associated with coronary artery heart disease.
Dr. Marmande has treated the plaintiff since January 5, 1972. Following his hospitalization in January of 1972, Dr. Marmande started plaintiff on a rehabilitation program and allowed him to return to light duty on the oil rig. In July of 1972, Dr. Marmande hospitalized plaintiff again following another attack of angina. Plaintiff has taken nitroglycerin pills for his chest pains under Dr. Marmande's direction and this medication has helped relieve his pains.
In October of 1972, plaintiff was admitted to Ochsner Foundation Hospital for cardiac studies at the recommendation of Dr. Marmande and the Bureau of Vocational Rehabilitation of the State Department of Education. Plaintiff was admitted *724 on October 18, 1972 and discharged on October 22, 1972. The forty-five page hospital record was introduced at trial and is a part of this record. That record reveals that plaintiff was subjected to numerous tests, x-rays and cardiac studies including cardiac catheterization and an angiogram. According to the report of Dr. P. J. Bower, contained in the hospital record, the cardiac catheterization revealed plaque in plaintiff's left anterior descending coronary artery and an otherwise normal heart. Dr. Bower's report states that flow through this area appeared normal and the degree of narrowing due to the plaque could not be precisely determined. Dr. Charles B. Moore, a cardiologist at Ochsner Clinic, stated in the discharge notes and in a report dated November 28, 1972, that the tests performed at Ochsner revealed essentially normal circulatory dynamics and normal coronary arteries. His diagnosis was that plaintiff's symptoms were secondary to chronic anxiety and hyperventilation. Dr. Moore stated in his report that the small plaque in the left anterior descending coronary artery was not felt to be significant.
In commenting on the Ochsner record and Dr. Moore's report, Dr. Marmande testified that the narrowing in the plaintiff's left anterior descending coronary artery due to plaque was an abnormal finding. Dr. Marmande also stated that he would disagree with Dr. Bower's statement that plaintiff had a normal flow through this area because the plaque in the artery could cause an abnormal flow on exertion. Thus, Dr. Marmande concluded that in his opinion plaintiff is suffering from arteriosclerosis and stated that he would not recommend that plaintiff should ever be able to resume his full normal duties as a roughneck. Dr. Marmande stated that plaintiff will continue to be subject to angina if he exerts himself strenuously in the future and such exertion would accelerate the heart damage.
Dr. Dennis Rosenberg, a thoracic and cardiovascular surgeon at Ochsner Foundation Hospital, testified at trial on behalf of defendants. Dr. Rosenberg stated that he had never examined plaintiff but had read and studied the Ochsner Hospital record. He stated that it was not unusual for him, as a surgeon, to make an evaluation of a patient from the record alone. Dr. Rosenberg testified that the test results and report of Dr. Moore indicated to him that plaintiff showed no signs of significant coronary artery disease and that the small plaque in plaintiff's coronary artery would not be of enough significance to cause disabling angina. Based upon the record and reports, Dr. Rosenberg was of the opinion that plaintiff's history indicated that the angina pains he suffered were due to emotional anxiety and hyperventilation. However, Dr. Rosenberg would not venture an opinion as to any possible disability which plaintiff might have and stated that he could not recommend that plaintiff return to his job as a roughneck. Dr. Rosenberg also stated that he only viewed the patient's history of anxiety as reflected in the history taken on October 18, 1972 at Ochsner Hospital, and he stated that he had not reviewed the records of Terrebonne General Hospital nor those of Dr. Marmande concerning the plaintiff.
Also testifying at trial was Dr. Ray Cinnater, an internist. Dr. Cinnater had seen Mr. Babin on two occasions. He first examined plaintiff in March of 1972. At that time Dr. Cinnater stated that he was of the opinion that Mr. Babin probably had arteriosclerotic heart disease and that he should be treated with medication and rest. Dr. Cinnater stated that if plaintiff continued to have chest pains without improvement then coronary angiograms should be obtained. Dr. Cinnater saw plaintiff again on August 24, 1972 at the request of Highland Insurance Company. At that time Dr. Cinnater stated that he concluded plaintiff had no major significant coronary artery disease. This opinion was based on the plaintiff having a normal chest x-ray and a normal Master's EKG. From these tests Dr. Cinnater stated that he was ninety-five to ninety-eight percent sure that *725 plaintiff had no significant coronary artery disease and he would recommend that after a period of rehabilitation Mr. Babin would be capable of resuming his full normal duties as a roughneck.
The medical report of Dr. Jorge I. Martinez, a cardiologist, is also contained in the record. This report is dated May 11, 1972 and concerns a cardiac evaluation of plaintiff at the Delgado College Rehabilitation Center. Dr. Martinez concluded that plaintiff had suffered a bout of angina pectoris in January of 1972. Dr. Martinez classified plaintiff's heart disease as arteriosclerotic and gave plaintiff a functional classification indicating that he was disabled from performing manual labor.
The trial judge noted the divergent opinions and conclusions of the medical experts concerning plaintiff's condition and his disability and concluded that greater weight should be given to plaintiff's treating physician. Thus, the judge a quo concluded that plaintiff is suffering from coronary heart disease with angina and is thereby permanently disabled from returning to his occupation of a roughneck.
It is well settled that where the testimony of specialists in a workmen's compensation case is conflicting or indicates only limited disability, it is not error for the trial court to accept instead, and accord greater weight to the testimony of the treating physician, even though he is only a general practitioner, because of his much greater opportunities for observation over an extended period of treatment. Gates v. Ashy Construction Company, Inc., 171 So. 2d 742 (3rd La.App.1965), writ refused 247 La. 678, 173 So.2d 542 (1965); Harris v. Argonaut Insurance Company, 142 So.2d 501 (2nd La.App.1962).
In the instant suit Dr. Marmande treated plaintiff for over ten months and had seen him during two hospitalizations and on nineteen other occasions at his office. Dr. Marmande's diagnosis is supported by the finding of plaque in plaintiff's coronary artery, indicating the presence of coronary artery disease. Dr. Marmande's conclusions are supported by the findings of Dr. Martinez, a cardiologist, who also diagnosed arteriosclerosis. In addition, we note that both Drs. Marmande and Martinez were primarily concerned with a determination of whether plaintiff was disabled from returning to work due to this heart disease, while Dr. Rosenberg indicated that he evaluated plaintiff's condition from the viewpoint of a consulting surgeon.
In the case of Bertrand v. Coal Operators Casualty Company, 253 La. 1115, 221 So.2d 816 (1969) the Supreme Court in evaluating the conflicting medical testimony there presented concerning a similar compensation claim stated at page 828 as follows:
"Medical experts are unable to determine or state the cause, the time of on-set, the rate of or reason for acceleration or regression of arteriosclerosis or coronary sclerosis. A plaintiff cannot be required to submit more proof than is here offered that he has suffered disability by reason of a causally connected accident when any additional proof must come from a science whose practitioners admittedly lack complete and exact knowledge of many aspects of the disabling disease and whose views are often divergent and vacillating."
In the case at bar we are presented with just such a situation. Dr. Cinnater, an internist, was of the initial opinion in March of 1972 that plaintiff was suffering from angina caused by arteriosclerosis. However, as of August of 1972 he was of the opinion that plaintiff had no significant coronary heart disease and was the only physician to specifically testify that plaintiff was not disabled and could return to work.
Dr. Rosenberg testified that his review of the medical record from Ochsner Foundation *726 Hospital indicated that plaintiff had no significant coronary artery disease. However, he refused to give an opinion as to any disability and admitted that he had never examined plaintiff and had not reviewed the records of Terrebonne General Hospital nor the records of Dr. Marmande concerning plaintiff's condition.
Dr. Moore's report was contained in the Ochsner Hospital record and he did not testify at trial. His report indicates a finding of plaque in plaintiff's left anterior descending coronary artery but Dr. Moore did not feel that this was significant evidence of coronary artery disease.
Both Dr. Moore and Dr. Rosenberg felt that plaintiff's chest pains were caused by anxiety and hyperventilation. This finding was based in part upon plaintiff's answers to a history questionnaire taken at Ochsner's on October 18, 1972. As pointed out by plaintiff in his testimony at trial, he was anxious and emotionally upset over his condition at the time he filled out this questionnaire on October 18, 1972. He had been experiencing chest pains, had suffered two severe attacks of angina, had been hospitalized twice, and was no longer working. According to plaintiff's testimony prior to January 4, 1972, he had not been exceptionally anxious or nervous.
An appellate court should not reverse the findings and conclusions of a trial court in workmen's compensation cases unless it is apparent that the trial court has committed manifest error. Sensley v. Aetna Casualty & Surety Company, supra. Our review of this record does not disclose such an error on the part of the judge a quo in accepting the testimony of plaintiff's treating physician over that of the other physicians and in finding that the plaintiff is permanently disabled.
Accordingly, for the above reasons, the judgment of the district court is affirmed at appellants' costs.
Affirmed.
NOTES
[*] TUCKER, J., died on the 25th day of January, 1974.