470 So.2d 301 (1985)
Shirley M. RANDALL
v.
ST. PAUL FIRE AND MARINE INSURANCE COMPANY.
No. 85-CA-9.
Court of Appeal of Louisiana, Fifth Circuit.
May 13, 1985.
*302 Leon C. Vial, III, Hahnville, for plaintiff-appellee.
Richard M. Simses, Denis Paul Juge, Sutherland & Juge, New Orleans, for defendant-appellant.
Before KLIEBERT, CURRAULT and GAUDIN, JJ.
KLIEBERT, Judge.
This is an appeal by St. Paul Fire and Marine Insurance Company, defendant, from a judgment finding Shirley M. Randall, plaintiff, totally and permanently disabled as a result of a work related injury and thus entitled to weekly compensation benefits plus 12½% penalties and $2,000.00 of attorney fees for the arbitrary and capricious termination of weekly compensation benefits. We amend in part, and as amended, affirm.
Plaintiff was injured on February 1, 1980 when she fell on a flight of stairs at her place of employment, Ochsner Medical Foundation. At the time of the injury, plaintiff was 37 years of age and was employed as a med-tech A-4, earning $4.93 per hour. At the commencement of the trial, plaintiff and defendant stipulated that plaintiff's injuries were work related and that weekly benefits totalling $26,069.00 were paid between February 1, 1980 and December 3, 1983, at which time they were terminated. Additionally, medical payments of $20,997.12 had been paid on her behalf.
In view of the stipulation only the extent of the disability and the applicability of penalties and attorney fees were issues at the trial. The treatment was extensive. It commenced immediately after the fall and was still going on at the time of trial.
Following two months of treatment, Dr. Huff, a general practitioner, referred plaintiff to Dr. Ralph Gessner, an orthopedist in Luling for further treatment. After a conservative course of treatment, a myelogram and a positive discogram, Dr. Gessner elected to operate. He removed a herniated disc at L5-S1 in July 1980 at the Hotel Dieu Hospital. Plaintiff remained under Dr. Gessner's treatment until November 1982.
At about the time she was discharged by Dr. Gessner, plaintiff went to Dr. Monica Benson, a specialist in physical medicine and rehabilitation, for treatment. In the course of her treatment, Dr. Benson referred her to Dr. John Jackson, a neurologist, for evaluation, and to Dr. Donald Richardson, a neurologist, and chairman of the pain clinic at Hotel Dieu Hospital, for evaluation. Dr. Richardson admitted her to the pain clinic. She received treatment at the clinic for six days, but then checked herself out because she was unhappy with the treatment.
During the course of her treatment by doctors of her selection, the defendant referred her to Dr. G.C. Battalora, Jr., an orthopedist; Dr. Robert L. Applebaum, neurologist, and Dr. Richard W. Levy, neurologist, for evaluation.
None of the doctors who treated or evaluated the plaintiff personally appeared at the trial. The depositions of Dr. Ralph Gessner, Dr. Monica Benson and Dr. John Jackson were submitted in evidence by the plaintiff and the depositions of Dr. Richard Levy and Dr. Donald Richardson were submitted by the defendant. Additionally, medical reports issued over a four year period by these doctors as well as the reports of Dr. Robert Applebaum and Dr. L.S. Kewalramani, who evaluated the plaintiff at the defendant's request and the *303 medical reports of Dr. H.D. Taylor and Dr. John Schaefer, who evaluated her during her stay at the pain clinic, were introduced in evidence.
At the time of trial plaintiff was still complaining of severe pain in the lower back and neck and contended she was no longer capable of doing the work she formerly performed at Ochsner nor could she do her housework. Two co-employees, one of which was her supervisor, supported her contention that she could not perform the work immediately after the fall. Her husband supported her testimony that she could not do her housework.
Plaintiff testified that her duties as a medical technician included drawing blood from patients with severe injuries and illnesses. This required her to bend and stoop while drawing the blood. While she made her blood collection rounds, she had to push a cart containing the instruments and equipment to perform her work. Previous to the February 1980 fall on the steps, plaintiff, while at work at Ochsner, had a chair slip up from under her. She was on medication for a back injury sustained in this fall when she fell down the stairs in February 1980. Prior to her employment with Ochsner, she had worked in various positions in a restaurant and department stores and had two years of art education at Southern University. According to her testimony, she was in constant pain and unable to perform any kind of work.
Based on the lay testimony and the medical evidence, the trial judge concluded the plaintiff was totally disabled from doing the type of work she was doing at the time of her injury. Further, he stated the defendant had not demonstrated to the court that the plaintiff could do sedentary work and he did not believe she could because she had a chronic pain syndrome. The defendant contends the trial judge erred in reaching those conclusions.
According to Dr. Gessner, the plaintiff's recovery from the surgery performed in July 1980 was uneventful. However, he became somewhat concerned when plaintiff continued to complain about pain and weakness of the back following surgery. His concern increased when on December 29, 1980 plaintiff came in the doctor's office using a cane. On most examinations her complaints of pain in the back were substantiated by muscle spasms in her lower back.
For the first time since he had started treating her, plaintiff had significant complaint of neck pain on a January 26, 1981 visit to Dr. Gessner.[1] Since she was complaining about pain in the entire upper right extremity he ordered EBC and nerve conducting studies. The tests were normal, hence, he concluded she had no nerve damage to the upper extremity.
She was again seen by Dr. Gessner on March 13, 1981, May 5, 1981 and June 22, 1981. Her general condition on these visits was the same as on previous visits. Since her complaint of pain in the lower back persisted, he began contemplating and discussed with her surgical intervention to perform a joint fusion. She was apprehensive about surgery so he elected to continue conservative treatment and included a mild exercise. In addition to the lower back pain on most of these visits she complained of pain in the neck.
On a September 14, 1981 visit plaintiff was having considerable problems with her lower back. This led Dr. Gessner to admit her to Hotel Dieu for a workup leading to surgery. Although these tests revealed some bulging at L4-5 and L5-1, he felt it was not significant and concluded surgery was not indicated.
Except for a visit on June 21, 1982, when he treated her solely for pain and soreness in the right rib cage from an automobile accident, he continued to see her during 1982 for her complaints of pain in the back and neck. Most of his examinations revealed *304 spasms of the back. When he saw her on September 20, 1982, he felt she had reached a chronic stage, i.e., the pain was not great, but it was there. Hence, he concluded she had plateaued. In his view, although there was some nagging type discomfort in the lower back, he felt it was not severe. Further, he believed she had reached the maximum medical recovery, therefore, medically there was nothing more he could do for her. Although he felt she could no longer perform a job which required lifting, climbing or squatting, he felt she could do sedentary work. Dr. Gessner considered plaintiff's blood collecting work at Ochsner as sedentary and hence performable by the plaintiff. He discharged her from his care on November 15, 1982 with instructions to return if she had a "flare up" of the back problem.
Plaintiff's first visit to Dr. Monica Benson was in November 1982. She was still being treated by Dr. Benson at the time of trial. The same conservative course of treatment followed by Dr. Gessner was initially followed by Dr. Benson. When plaintiff did not respond to the treatment, Dr. Benson referred her to Dr. Jackson and to the Hotel Dieu Pain Clinic for evaluation and treatment. During 1983 plaintiff reported to Dr. Benson two exacerbations of pain; one when she attempted to sweep her floor, and one when she stooped down while having x-rays taken by doctors she was referred to by the federal social security agency. After the latter episode, she reverted to using a cane in order to remain ambulatory. Dr. Benson next attempted pelvic traction as a treatment. These were discontinued at plaintiff's request because she said she could not tolerate the pain of traction.
In Dr. Benson's opinion the plaintiff would continue to have the pain and would be disabled for the rest of her life. She believed surgery would relieve her of some of her cervical problems but the prognosis for same was not expected to be very good because this would be the second surgical effort to correct her problem. Nevertheless, Dr. Benson recommended surgery but plaintiff rejected it because plaintiff did not want to take the chance her pain would become worse as, according to her, it had after the first surgery. In Dr. Benson's view, the plaintiff had a pinched nerve and degenerative disc disease with spurring. Her views were based on her own examination and that of other doctors who had evaluated her. More specifically, on cross examination, she said "the disability is based on her complaints of chronic back pain and neck pain." According to Dr. Benson, objective symptoms supporting her diagnosis were two positive CAT scans (one neck and one back), a positive EMH of the cervical spine and muscle tenderness and spasm.
Dr. Jackson saw the plaintiff on March 24, 1983, at which time she complained of neck pain, lower back pain with numbness of the left foot, shoulder pain and numbness of the left second, third and fourth fingers. He originally believed the x-ray interpretation of a radiologist and hence concluded there was a probable disc herniation at the C6-C7 level which would account for her neck pain. However, after reading the CAT scans and x-rays, he disagreed with the radiologist. With respect to the lower back, Dr. Jackson said he was unable to come to an objective finding except for an abnormal achilles reflex. Therefore, he concluded that without further tests he was unable to come to a final conclusion as to plaintiff's condition.
Dr. Richardson of the Hotel Dieu Pain Clinic testified that he felt plaintiff was not fully evaluated at the clinic. He concluded that the plaintiff suffered from "magnified pain complaint" due to low back pain. He also considered the possibility she may have been malingering. He also found plaintiff had generalized degenerative disc disease in her neck. However, the time plaintiff stayed at the pain clinic was not sufficient to fully evaluate her pain. Based on his examinations and tests during her stay at the pain clinic, in his view she had a minimum amount of pain compared to her complaints.
*305 Dr. Richard W. Levy concluded that from a neurological standpoint Mrs. Randall had a five to ten percent partial permanent anatomical disability of the body as a whole attributable to the disc removal of June 1980. From a functional point of view, he saw no reason why plaintiff could not return to the duties of an I.V. technician. From a neurological point of view, he saw no objective evidence of pain.
In its brief, the appellant urges that since the preponderance of the medical testimony indicates there is no objective basis for plaintiff's continued complaint of pain, it should be controlling. The Louisiana Supreme Court in Tantillo v. Liberty Mutual Insurance Company, 315 So.2d 743 (La.1975) stated:
"It is generally true that medical testimony which is not in conflict cannot be overcome by lay testimony. Nevertheless, in every case it is the totality of the evidence, medical and lay, which must be examined by the court in making its determination of whether to grant an award for disability. Great weight, almost to the point of exclusion of other evidence, is given to uncontradicted medical evidence which is directed toward a complex scientific question. However, in all cases, it is the judge's function to determine the weight which is to be accorded the medical testimony as well as the lay testimony. Lay testimony has great probative value in establishing certain facts, such as the existence and location of pain and the actual ability or inability of a claimant to perform certain physical functions or to pursue his regular employment."
An employee who can only work in substantial pain may be totally disabled. Calogero v. City of New Orleans, 397 So.2d 1252 (La.1980); Johnson v. Insurance Company of North America, 454 So.2d 1113 (La.1984). Whether a plaintiff's pain is substantial enough to render him disabled is a question of fact to be determined by the trier of the fact. Ellis v. Rapides Parish School Board, 419 So.2d 990 (3rd Cir.1982).
Here the treating physician, Dr. Benson, a specialist in rehabilitation, testified the plaintiff was totally disabled. Although it is true some of the orthopedic surgeons and neurosurgeons, some of whom had also treated plaintiff, testified that in their view plaintiff was not totally and permanently disabled, all based their views on their failure to find objective symptoms within their special field of medicine, i.e., neurology or orthopedic, which would explain a basis for plaintiff's complaint of pain. Thus, none except Dr. Richardson could or would say plaintiff was not in fact in pain for quite logically and reasonably the basis for plaintiff's pain may well be outside of the neurologic or orthopedic field of medicine.
Dr. Benson, who testified plaintiff was unable to do any kind of sustained work, was a specialist in physical medicine and rehabilitation. She treated plaintiff over a long period of time, was fully aware of her history and had substantially more contact with plaintiff than the other doctors. As a treating physician, her testimony can be given greater weight than those of a specialist who had only limited contact with the plaintiff. Babin v. Highlands Insurance Company, 290 So.2d 720 (1st Cir.1974).
In the instant case, plaintiff testified that she suffers constant pain and was unable to perform even the most routine household chores. She and her former co-employees testified that her work required lifting, bending and stooping. Additionally, plaintiff's husband testified that his wife suffered constantly and needed almost constant care and at the time of trial was unable to do her housework.
In evaluating evidence the trier of fact should accept as true the uncontradicted testimony of a plaintiff witness absent a sound reason for its rejection. Robertson v. Scanio Produce and Institutional Foods, Inc., 449 So.2d 459 (La.1984). The workmen's compensation law must be liberally interpreted in favor of the injured worker. Its beneficent purposes are best served when great weight is given to a *306 court's determination that an employee is disabled. Johnson v. Insurance Company of North America, supra.
The trial judge, consistent with his fact-finding function, found the plaintiff was totally and permanently disabled. Such a determination of fact should not be disturbed on appeal when there is evidence before the trier of the facts which, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for such finding, unless such finding is clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Crump v. Hartford Accident and Indemnity Co., 367 So.2d 300 (La.1979). Viewed from that standard, although we, as the fact finder, may have concluded otherwise, cannot say the trial judge was clearly wrong in finding the plaintiff totally and permanently disabled.
The trial judge in his reasons for judgment found that the appellant had acted arbitrarily and capriciously in stopping workmen's compensation payments after receiving Dr. Levy's report. The defendant, in justifying its termination of payments, offered the medical report of Dr. Richard Levy. In Dr. Levy's deposition, he was careful to point out that his views were expressed solely from a neurological standpoint. He further testified that he was unable to achieve any final diagnosis at the time of his only examination because plaintiff had refused to take further x-ray examinations and he needed such tests to reach a final diagnosis.
In his reasons for judgment, the trial judge pointed out that the defendant was aware plaintiff had undergone surgery, was complaining of substantial pain, and was seeking further medical help because her pain was not relieved. Further, he correctly pointed out that in his report Dr. Levy found plaintiff had some residual disability. Accordingly, he concluded the weekly compensation benefits had been wrongfully terminated.
The determination of whether an insurer was arbitrary in terminating benefits to a claim is a factual issue and should not be disturbed unless it is manifestly erroneous. Richard v. Standard Fittings, 379 So.2d 33 (3rd Cir.1979). Although a close question and one which some other trier of fact might well reach the opposite conclusion, we cannot say the trial judge was manifestly erroneous except in setting the amount of the penalty at 12½% instead of 12%.
Accordingly, the trial court judgment is amended to show the amount of the penalty is 12% in lieu of 12½% and applied only to the delinquent payments and in all other respects is affirmed. Appellant to pay all costs of the appeal.
AMENDED IN PART AND AS AMENDED, AFFIRMED.
NOTES
[1] Hospital records on her initial hospitalization, however, shows she complained of neck pains and did receive treatment for same.