550 So.2d 244 (1989)
Adrianne S. McCRAY
v.
Carolyn ABRAHAM and Sentry Insurance Company.
No. 88-CA-1660.
Court of Appeal of Louisiana, Fourth Circuit.
September 14, 1989.
*245 Michael J. Laughlin, Stassi, Rausch & Giordano, Metairie, for plaintiff-appellant.
Lynn L. Lightfoot, New Orleans, for defendants-appellees.
Before CIACCIO, WARD and ARMSTRONG, JJ.
ARMSTRONG, Judge.
Plaintiff, Adrianne McCray, instituted this action against defendant, Carolyn Abraham, and her insurer, Sentry Insurance Company, seeking damages to compensate her for personal injuries and property damage sustained in an automobile accident. Following a trial by jury, judgement was rendered in favor of plaintiff awarding her $379.00 in damages. Plaintiff now appeals, seeking an increase in special and general damages.
The accident occurred on July 4, 1985. Plaintiff proceeded to make a left turn onto South Claiborne Avenue, northbound, at Mistletoe Street. She went into a skid on the rain-slicked roadway, and her vehicle was struck broadside by a vehicle driven by defendant.
The accident investigation report completed by Officer Gary Gremillion indicated that plaintiff received minor injuries in the collision. The day after the accident, July 5th, plaintiff was examined by Dr. Charles Peterson, a general practitioner. Dr. Peterson diagnosed plaintiff to be suffering from a large contusion or hematoma of the left thigh, a contusion of the left upper arm, and a sprain of the left wrist. Dr. Peterson also found some tenderness in the back of plaintiff's neck and her upper back, with some limitation of motion on flexion and extension of the neck. He diagnosed this as muscle strain. He prescribed a muscle relaxant for plaintiff and gave her steroid injections.
Dr. Peterson saw plaintiff one more time, on July 8th. He noted minimal improvements but said she had the same complaints as before. He testified that the history and complaints made by plaintiff were consistent with the findings he made. Based upon his examination and findings, he opined that plaintiff's injuries were caused by the automobile accident. It was his impression that she would require subsequent medical care. No evidence was introduced as to the medical expenses incurred by plaintiff for Dr. Peterson's treatment.
Dr. Darryl Richard, a chiropractor, testified on behalf of the plaintiff. The defense stipulated that he was an expert in the field of chiropractic. Dr. Richard first examined plaintiff on August 5, 1985, one month *246 after the accident. Plaintiff gave him a history of having been involved in an automobile accident. Plaintiff complained of pain in her back upon movement, particularly upon turning to the right. She also complained of pain in her left shoulder, forearm, and left hand. Cervical rotation to the left caused plaintiff to complain of pain in her neck and trapezius muscle, although the range of motion was within normal limits. Dr. Richard also found spasms in the neck and trapezius muscles.
X-rays showed an abnormal curvature of plaintiff's lumbar and cervical spine. Thermogram tests were abnormal for the cervical spine and were "consistent with cervical nerve root irritation in three levels" (of the spine). Dr. Richard's final diagnosis was (1) acute hyperflexion/hyperextension of the cervical spine; (2) cervical radicular neuralgia, or, pain radiating from the cervical nerves of the spine; (3) acute moderate cervical strain and sprain; (4) lumbosacral facet syndrome with nerve root irritation.
Dr. Richard's treatment of plaintiff consisted of the application of wet moist heat, spinal traction, chiropractic manipulation of the spine, and instructions to sleep with an orthopedic pillow supporting her head and neck.
Dr. Richard testified that plaintiff had pre-existing arthritis in her neck and spine. He believed that the arthritis was indicative of a weakness in plaintiff's neck and that the force of the impact affected the area. He also stated that the soft tissue involvement, such as the muscle spasms, sprains, and strains, were causally related to the trauma sustained in the accident.
Dr. Richard saw plaintiff twenty-three times between August 5, 1985 and March 5, 1986. Copies of the bills for his services were introduced in evidence and showed a total of $2,373.00 charged plaintiff.
Plaintiff testified that she had not sustained any neck or back injuries before this accident and had not experienced any pain in these areas until the accident. At the time of trial, April, 1988, she was suffering from intermittent pain in her hand, left leg, and neck. She claimed to have missed three consecutive days from work immediately following the accident due to her injuries, and later, in October, 1985, missed three more days.
Plaintiff was employed by the New Orleans Sewerage and Water Board. Elizabeth West, an employee of the payroll department, testified that company records reflected that plaintiff missed a day from work on July 8, 1985. She claimed that the records showed that plaintiff did not miss another day of work until November 18, 1985, and that was an annual leave day taken in conjunction with several other days. Other than showing whether it was a sick day or an annual leave day, the records did not reflect the reason for a particular absence.
Officer Gremillion testified that the vehicle that struck plaintiff's vehicle was travelling at approximately thirty miles per hour. Plaintiff's vehicle was spinning out of control on the wet street. His report reflected that plaintiff was not wearing her seatbelt at the time of impact. The report also reflected that the damage to plaintiff's vehicle was heavy, and on the left side.
Raul Farris testified on behalf of plaintiff as to the damage to her automobile. The defense stipulated that he was an expert in the field of automobile appraisals. Mr. Farris testified that plaintiff's 1979 Chevrolet Caprice Classic station wagon would have been worth $4,100.00 without the damage, which was confined to the left side. He determined that the cost of repairing the damage was $3,817.84. He considered the car a total loss, and valued the vehicle at $800.00 in it's wrecked condition. He subtracted this value from the $4,100.00 figure, and calculated that plaintiff's actual cash loss was $3,300.00. Farris had "no doubt" that all of the damage to plaintiff's vehicle was from the accident in question.
The jury found that the concurrent negligence of plaintiff and defendant contributed to the accident. Fault was assessed 75% to plaintiff and 25% to defendant. Liability is not at issue on appeal, only damages. Based upon the above evidence, the jury determined that the total amount of damages sustained by plaintiff was $1,516.00. *247 This figure was reduced by 75%, leaving $379.00 to be awarded to plaintiff.
Plaintiff seeks an increase in both special and general damages. The jury did not itemize damages so we are unable to determine what the award represented.

SPECIAL DAMAGES
Medical Expenses:
Plaintiff claims that the evidence was uncontroverted that she sustained bodily injuries as the result of the accident. For the following reasons, we agree.
Plaintiff's vehicle, spinning out of control, was struck by an automobile traveling an estimated thirty miles per hour. A photograph of her vehicle shows severe damage to the left side, where she would have been sitting. She was not wearing her seatbelt and related to Dr. Richard that she was thrown to the right side of the vehicle by the force of the impact. The accident report completed by Officer Gremillion reflected that plaintiff suffered minor injuries. The day after the accident Dr. Peterson examined plaintiff and found her to be suffering from contusions on the left side of her body and a strained neck. One month after the accident plaintiff sought treatment from Dr. Richard, relating to him essentially the same complaints made to Dr. Peterson.
The evidence presented at trial was uncontroverted that plaintiff received at least contusions and muscle strains as a result of the accident. Defendant cites several cases for the proposition that, although the trier of fact may not "lightly" disregard the uncontradicted testimony of an expert, that testimony is not binding on the court. See Werlein v. Daniels, 538 So.2d 722 (La.App. 4th Cir.1989); Morvant v. Smith, 463 So.2d 75 (La.App. 3rd Cir. 1985). It is defendant's position on appeal that the jury simply did not believe the testimony of Dr. Richards. No such assertion is made concerning the testimony of Dr. Peterson.
Although the principal cited is a sound one, and it recognizes that the ultimate finder of fact is the judge or jury, the record as a whole must furnish some rational basis for the decision of the factfinder. The factfinder may not "lightly", or on a whim, disregard the expert testimony. In Robertson v. Scanio Produce & Institutional Foods, Inc., 449 So.2d 459 (La.1984), the Louisiana Supreme Court stated:
"In evaluating evidence, the trier of fact should accept as true the uncontradicted testimony of a witness even though the witness is a party, where the record indicates no sound reason for its rejection."
See also West v. Bayou Vista Manor, 371 So.2d 1146 (La.1979); Streeter v. Sears Roebuck and Co., Inc., 533 So.2d 54 (La. App. 3rd Cir.1988); Green v. Cement Products Services, Inc., 526 So.2d 493 (La.App. 1st Cir.1988), writ denied, 531 So.2d 270 (La.1988); Hartman v. Dittco Division of National Steel Products Co., 510 So.2d 423 (La.App. 2d Cir.1987); Randall v. St. Paul Fire & Marine Ins. Co., 470 So.2d 301 (La.App. 5th Cir.1985).
Based upon the evidence as a whole, we feel the jury would have erred if it had not found that plaintiff sustained at least contusions and muscle strains as a result of the accident.
Plaintiff was not entitled to any damages for her expenses incurred in seeing Dr. Peterson, because no evidence was introduced upon which such an award could have been made. Dr. Peterson testified that plaintiff would have required treatment after the two times he saw her. Four weeks after he last saw her, she sought treatment from Dr. Richard.
Plaintiff testified that she had never experienced neck or back pain before the accident. The evidence establishes that, although she had pre-existing arthritis in her neck and back, the accident aggravated it, necessitating treatment. It is well-settled law that a tortfeasor takes her victim as she finds her. A tortfeasor is responsible in damages for consequenses of her tort although those damages are greater because of a pre-existing condition. Reck v. Stevens, 373 So.2d 498 (La.1979); Kuck v. City of New Orleans, 531 So.2d 1142 (La.App. 4th Cir.1988).
*248 Louisiana law strives to grant a full recovery to tort victims. La.C.C. art. 2315; Quealy v. Paine, Webber, Jackson & Curtis, Inc., 464 So.2d 930 (La.App. 4th Cir. 1985). The primary objective in awarding damages is to restore the injured party to the position she was in immediately preceding the accident. Farr v. Johnson, 308 So.2d 884 (La.App. 2d Cir.1975), writ denied, 315 So.2d 143 (La.1975).
The evidence establishes that plaintiff sought treatment from Dr. Richard solely as a result of injuries caused, or pre-existing conditions aggravated, by the accident. There is no evidence that Dr. Richard treated plaintiff for anything other than symptoms manifesting themselves as a direct result of the accident. The bills for this treatment totalled $2,373.00. The jury erred in failing to award plaintiff the full amount of these medical expenses. The judgement of the trial court must be amended to award plaintiff 25% of these expenses, reflecting the percentage of fault assessed against the defendant.
Property Damage:
Defendant claims that the jury chose to disregard the testimony of Mr. Farris, the expert in automobile appraisal, because he could not identify the plaintiff's vehicle as being the one that he actually appraised. When asked if a photograph shown him depicted plaintiff's automobile, Farris stated, "Well, it's been two years since I've seen this car, so I couldn't swear to that fact". But, he said, the photograph was of a Chevrolet Caprice Classic station wagon, the same kind of automobile owned by plaintiff. The photograph showed damage to the left side of the station wagon. The written appraisal was introduced in evidence and listed this model automobile as the one appraised by him. All of the replacement parts listed in the appraisal were for the left side of the station wagon. It listed plaintiff as the owner and was dated August 8, 1985, one month after the accident. The accident investigation report listed the plaintiff's vehicle as a brown 1979 Chevrolet Caprice station wagon with heavy damage to, as portrayed by a diagram, the left side of the vehicle.
The evidence establishes that it was more probable than not that the automobile appraised by Farris belonged to plaintiff, and was the one she was driving at the time of the accident. The actual cash loss suffered by plaintiff because of the damage to her automobile, $3,300.00 as determined by Farris, is not disputed by defendant. The record furnishes no evidence that the figure is incorrect. Therefore, we find that the jury erred in failing to find that plaintiff suffered damages in this amount. The judgement of the trial court will be amended to award plaintiff 25% of this amount, reflecting the portion of fault attributed to the defendant.
Lost Wages:
Plaintiff claims the evidence establishes that she sustained lost wages in the amount of $388.80. We disagree. Because of the contradictory testimony regarding this element of damages, we feel the jury could have reasonably found that plaintiff missed only one day of work because of the accident, July 8, 1985. The defendant concedes this fact on appeal. Plaintiff was being paid at the rate of $9.26 per hour, and worked a seven hour day. She sustained a loss of $64.82 for the one absence.

GENERAL DAMAGES
Plaintiff contends that the jury erred in either failing to award any general damages, or awarding an inadequate amount of general damages.
A trier of fact has much discretion in awarding general damages, which are not susceptible of precise measurement. La. C.C. art. 1999. Before an appellate court can disturb an award of general damages made by the trial court, the record must "clearly reveal" that the award was an abuse of discretion. Reck v. Stevens, supra; Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1977); Gullo v. Sewerage & Water Board of New Orleans, 535 So.2d 23 (La.App. 4th Cir.1988).
Defendant submits that the evidence established only that plaintiff suffered a "contusion" as a result of the accident.
*249 We have previously stated that the evidence established that plaintiff suffered contusions and muscle strains. We also found that the pre-existing arthritis in her neck and back was aggravated by the accident.
Plaintiff obviously suffered some pain as the result of the accident. She was prescribed muscle relaxants by, and received cortisone injections from, Dr. Peterson. Dr. Richard placed her in traction, manipulated her spine, and told her to sleep on a cervical pillow. At the time plaintiff stated that she still suffered from pain on occasion. It is extremely difficult to measure pain. Although Dr. Richard gave plaintiff a 5% disability rating, he did not testify that this disability was the result of the accident. Considering the pre-existing arthritis, it could not have been caused solely by the accident.
It is unlikely perhaps, but possible, that the jury found that plaintiff suffered $1,516.00 in general damages. Based upon the evidence before us, we are unable to say that such an award, although on the low end of the scale, would be an abuse of the great discretion afforded the jury.
We have found that plaintiff suffered a total of $5,737.82 in special damages as a result of the accident. We will add to that the $1,516.00 figure representing possible general damages, for a total of $7,253.82. Since plaintiff was found to be 75% at fault, and defendant only 25%, plaintiff is entitled to only 25% of $7,253.82, or $1,813.46. We will amend the trial court's judgement accordingly.
For the foregoing reasons we amend the judgement of the trial court to award plaintiff a total of $1,813.46 in damages. In all other respects we affirm the judgement of the trial court.
AMENDED, AFFIRMED AS AMENDED.