bCARTER, Judge.
This is an appeal from a trial court judgment in an action for damages.

FACTS

On April 8, 1993, an extremely rainy day, plaintiff, Cynthia Lachico, entered the premises of First National Bank Shares, Inc. (First National Bank) located on Grand Cail-lou Road in Houma. After stepping off of a wet floor mat located inside the bank near the front door, plaintiff slipped and fell, sustaining injuries.
On February 2, 1994, plaintiff filed an action for damages against First National Bank and its insurer, Royal Insurance Company of America. In the petition, plaintiff alleged that defendants were negligent in the following respects, among others: (1) failing to reasonably inspect the premises; (2) failing to see what should have been seen; (3) failing to keep its floor in a safe and orderly condition; and (4) failing to supervise properly its employees in the safe and prudent operation of its business. Defendants answered the petition, pleading the affirmative defenses of plaintiff fault or comparative negligence, third party fault or comparative negligence, and reasonable maintenance of the premises.
On May 2, 1995, trial on the merits was held. On May 3, 1995, the trial court rendered judgment in open court in favor of plaintiff, stating, in part, as follows:
The Court notes that First National Bank is not technically a merchant as defined in Louisiana Revised Statute ... [9:]2800.6. It is not a seller of products....
[[Image here]]
[T]hey [the bank] set up a regular routine insofar as inspection, regular mopping, had [a] designated person to watch the front door, and tried to address the water and slippage problem throughout the day. The Court does find that there is a duty upon the bank to its customers to protect them against unreasonable risk[s] of harm. And although the bank made some attempt to set up a procedure, the Court finds that *307 they negligently carried out that proee-dure.
[[Image here]]
And the reason the Court feels they were negligent in their carrying out of their cleanup activities, the whole purpose of the floor mat is to allow patrons to wipe off foreign objects from their feet or to dry their feet as they come into the branch bank if the weather is bad outside. Leaving the floor mat on the floor defeats the entire purpose once the floor mat has become soaked in water.
[[Image here]]
The bank had a duty to ensure that the area was dry, including the removal of any floor, wet floor mats and replacing them with dry floor mats or just removing them altogether. Leaving the floor mat down wet served |3no purpose and in actuality created a risk, an unreasonable risk of harm which would be unexpected by the patron coming in. Therefore, the Court finds that the clean-up procedures as set up were negligently carried out, it was a violation of the duty owed to its customers, and therefore First National Bank [Sjhares and their insurer are going to be liable to the plaintiff for any and all injuries she may have sustained.
On May 22, 1994, the trial court signed a judgment, awarding plaintiff general damages of $30,000.00, medical expenses, and expert witness fees. Defendants were ordered to pay costs as well as interest from the date of judicial demand.
Defendants appealed from the adverse judgment, assigning the following specifications of error:
(1) The trial court erred as a matter of law when it failed to apply the legal standards established in this circuit regarding the duty owed by a business owner to maintain its premises in [a] reasonably safe condition.
a. The trial court erred in finding that the clean-up procedures of First National were negligently implemented.
b. The trial court erred in imposing a duty on First National to insure that the floor of the bank’s entrance was kept completely dry. This court has specifically held that there is no such duty.
c. The trial court erred in accepting the uncorroborated testimony of the plaintiff that a foreign substance, water from a floor mat, caused her sandals to become wet, which in turn caused her to slip and fall.
d. The trial court erred in denying the defendants motion for a directed verdict.
(2) Alternatively, the trial court committed manifest error in making a damage award when it disregarded the testimony of the primary treating physician; the general damages awarded by the trial court were excessive.

LIABILITY

First National Bank contends that the trial court erroneously applied to its actions the heightened standard of care which is applied to store merchants. In support of this contention, First National Bank points to the trial court’s statement that “[t]he bank had a duty to ensure that the area was dry.”
Pursuant to LSA-R.S. 9:2800.6, which is often referred to as the “slip and fall” statute, to establish a prima facie case under the statute, a plaintiff must prove that he slipped in a foreign substance on the merchant’s premises which resulted in his injury |4and which constituted a hazardous condition on the merchant’s premises. The burden of proof then shifts to the merchant to exculpate itself from the presumption of negligence. The merchant’s burden of proof is two-fold. The merchant must prove that its employees did not cause the hazard and that it exercised due care in taking reasonable protective measures to clean the hazards that may have been caused by its customers, for example, periodic protective measures, inspections, and clean-up of its premises. LSA-R.S. 9:2800.6. See Rudd v. Atlas Processing Refinery, 26,048, p. 6 (La.App. 2nd Cir. 9/21/94); 644 So.2d 402, 407, writ denied, 94-2605 (La. 12/16/94); 648 So.2d 392.
In the instant case, First National Bank is a non-store merchant, and the heightened standard of care set forth in LSA-R.S. 9:2800.6 is not applicable to its *308 actions. Rather, First National Bank’s standard is somewhat less than that imposed on store merchants. See Neyrey v. Touro Infirmary, 94-0078, p. 4 (La.App. 4th Cir. 6/30/94); 639 So.2d 1214, 1216; Reynolds v. St. Francis Medical Center, 597 So.2d 1121, 1123 (La.App. 2nd Cir.1992); LeBlanc v. Alton Ochsner Medical Foundation, 563 So.2d 312, 316 (La.App. 5th Cir.1990); Webster v. Terrebonne Parish Council, 515 So.2d 461, 462-63 (La.App. 1st Cir.1987), writ denied, 516 So.2d 368 (La.1988). Part of the rationale for imposing such a high degree of care on store merchants, as stated by the supreme court in Gonzales v. Winn-Dixie Louisiana, Inc., 326 So.2d 486, 488 (La.1976), is as follows:
[T]he self-service grocery system requires customers to focus their attention on the shelves and to handle merchandise. The system increases the risk of harm from objects dropped on the floor by customers and, correspondingly, the duty to minimize the risk by frequent inspections and cleanups.
The nature of a merchant’s duty does not change from place to place. The duty, which is to use reasonable care to protect business invitees against hazards which create an unreasonable risk of harm, remains constant. What does change is the degree of risk posed by any foreign object on a floor and the reasonableness of the methods used to remove the risk. Webster v. Terrebonne Parish Council, 515 So.2d at 463. See Neyrey v. Touro Infirmary, 639 So.2d at 1216; Reynolds v. St. Francis \5Medical Center, 597 So.2d at 1123. The circumstances which determine the reasonableness of protective measures include the type and volume of merchandise, the type of display, the floor space utilized for customer service, the nature of customer service, and the volume of business. Gonzales v. Winn-Dixie Louisiana, Inc., 326 So.2d at 488.
Based on the trial court’s statements regarding the duty imposed on First National Bank, including the statement that First National Bank had a duty “to ensure that the area was dry,” we find that the trial court committed legal error in its application of this standard of care to the bank’s actions. As a non-store merchant, First National Bank was required to show that it acted reasonably to discover and correct the dangerous condition or that it exercised reasonable care for the safety of its business invitees.
The law is clear that, where a finding of fact is interdicted because of some legal error implicit in the fact-finding process or when a mistake of law forecloses any finding of fact, and where the record is otherwise complete, the appellate court should, if it can, render judgment on the record. Ragas v. Argonaut Southwest Insurance Co., 388 So.2d 707, 708 (La.1980); Landry v. St. Charles Inn, Inc., 446 So.2d 1246, 1252 n. 3 (La.App. 4th Cir.1984). Inasmuch as the application of the incorrect standard of care interdicts the fact-finding process, we cannot attribute to the trial court’s ultimate factual findings the great deference to which they would ordinarily be entitled. See Ferrell v. Fireman’s Fund Insurance Co., 94-1252 (La. 2/20/95); 650 So.2d 742, 747. Accordingly, in the instant case, we must perform a de novo review of First National Bank’s liability.
In the instant case, at trial of this matter, plaintiff testified that, on April 8, 1993, before 2:00 p.m., she drove to First National Bank located on Grand Caillou Road in Houma to open a checking account. Plaintiff noted that it had been raining heavily that day, and the streets and sidewalks were wet. Plaintiff exited her car, walked on the sidewalk, and entered the front door of First National Bank. Once inside the bank, plaintiff stepped onto a large mat, which she noticed to be “soaking wet.” Plaintiff, | showever, did not notice any water on the floor of the bank. After stepping off of the floor mat, plaintiff slipped and fell onto her buttocks. A teller witnessed plaintiffs fall and asked plaintiff if she was “okay.” Plaintiff indicated that she thought she was okay, got up, and walked over to the “new accounts” area. According to plaintiff, she told the “new accounts” representative that she had fallen. She then completed her banking business and went home. Plaintiff indicated that, on the day of the accident, she was wearing sandals with wooden bottoms, and *309 there were no “wet floor” signs in the lobby of the bank.
Marla Porche, branch manager/vice-president of the eastside branch of First National Bank on Grand Caillou Road, testified that she did not witness plaintiffs fall, but was made aware of it by someone else. Porche recalled the day of the accident, noting that there were “treacherous rains” that day and that water was coming into the bank under the front door. At approximately 8:45 that morning, the main branch porter came in and mopped the floor because there was a large amount of standing water on the floor. Two “wet floor” signs were placed in the lobby, one near the front entrance and one near the rear entrance. Porche indicated that the floor was dry when the bank opened at 9:00 a.m. Throughout the day, Porche visually monitored the area three or four times, and she instructed a teller, namely Amy Hutchinson, to monitor and clean-up the area as needed. Porche did not recall a floor mat being located near the front entrance on the day of the accident, but she acknowledged that a mat could have been there. Porche testified that no orders were given regarding clean-up or removal of the mat.
Porche explained that she was made aware of the accident immediately after it occurred and checked the area of plaintiffs fall, finding no standing water on the floor. However, Porche indicated that the floor “may have been damp.” Porche explained that she did not speak with plaintiff because plaintiff was already at the “new accounts” desk. According to Porche, the accident occurred shortly after 4:00 p.m. Porche estimated that 400 lobby transactions were completed on the day of the accident, and there were no other reports of slipping or of water on the floor.
17Laura Collins testified that, on April 8, 1998, she was employed at the east Houma branch of First National Bank located on Grand Caillou Road as the “new accounts” representative. Collins had no independent recollection of plaintiff or the slip and fall incident, but stated that she did open an account for plaintiff on that day and that plaintiff did not report the fall to her.
Amy Hutchinson testified that, on April 8, 1993, she was employed as a teller at the east Houma branch of First National Bank on Grand Caillou Road. Hutchinson was instructed by Porche to monitor the area near the front entrance, and she placed a “wet floor” sign between the front door and the signature table, which is located approximately three to four feet from the front door. Hutchinson stated that, immediately prior to plaintiff entering the bank on that day, there was no water on the floor. At approximately 3:00 p.m., Hutchinson saw plaintiff enter the bank, take a couple of steps, then fall to her right knee. Plaintiff then grabbed onto the signature table and pulled herself up. Hutchinson walked over to plaintiff and asked if she was okay, at which time plaintiff responded that she was okay, and Hutchinson directed her to the “new accounts” representative. According to Hutchinson, the floor was not wet at that time.
Plaintiff testified that there was no signature table located near the front door on the day of her accident and that Hutchinson was not the teller to whom she spoke after her fall.
After reviewing the entire record in this matter, we find that First National Bank failed to act reasonably to discover and correct the danger created by the wet floor mat. The inspection and clean-up procedures established by First National Bank employees were adequate to discover the danger, however, in implementing those procedures, the bank employees failed to discover and remove the dangerous condition, namely the wet floor mat, which existed. Plaintiffs un-contradicted testimony revealed that the mat was obviously wet. Although the bank employees directed their attention to the presence of water on the floor, no attention was given to the condition of the floor mat. | ^Accordingly, we find that First National Bank failed to exercise reasonable care for the safety of its patrons. As such, First National Bank is liable for plaintiffs damages.[2]

*310
GENERAL DAMAGES

“General damages” involve mental or physical pain or suffering, inconvenience, loss of gratification or intellectual or physical enjoyment, or other losses of lifestyle which cannot be measured definitively in terms of money. White v. Longanecker, 93-1122 (La. App. 1st Cir. 5/23/94); 637 So.2d 1213, 1215; writ denied, 94-1704 (La. 10/7/94); 644 So.2d 640; Boudreaux v. Farmer, 604 So.2d 641, 654 (La.App. 1st Cir.), writs denied, 605 So.2d 1373, 1374 (La.1992). The primary objective of general damages is to restore the injured party in as near a fashion as possible to the state she was in at the time immediately preceding injury. McCray v. Abraham, 550 So.2d 244, 248 (La.App. 4th Cir. 1989). It is well settled in our jurisprudence that a tort feasor takes his victim as he finds her. American Motorist Insurance Company v. American Rent-All, Inc., 579 So.2d 429, 433 (La.1991); McCray v. Abraham, 550 So.2d at 247. The factors to be considered in assessing quantum for pain and suffering are severity and duration. Glasper v. Henry, 589 So.2d 1173, 1180 (La.App. 4th Cir.1991), writ denied, 594 So.2d 1315 (La.1992); Anthony v. Hospital Service District No. 1, 477 So.2d 1180, 1186 (La.App. 1st Cir.1985), writ denied, 480 So.2d 743 (La.1986).
Although we found that the trial court’s application of the incorrect standard of care interdicted the trial court’s liability determination, this error did not interdict the trial court’s determination of damages. Therefore, we will review the damage awards under the abuse of discretion standard, rather than de novo. See Hoyt v. Wood/Chuck Chipper Corp., 92-1498, p. 13 (La.App. 1st Cir. 1/6/95); 651 So.2d 1344, 1353; writ denied, 95-0753 (La. 5/19/95); 654 So.2d 695; Landry v. Doe, 597 So.2d 14,20 n. 6 (La.App. 1st Cir.1992). See also Picou v. Ferrara, 483 So.2d 915, 918 (La.1986). Before a court of appeal can disturb an award made by a trial court, the record must Rclearly reveal that the trier of fact abused its much discretion in making the award. LSA-C.C. arts. 1999 and 2324.1; American Motorist Insurance Company v. American Rent-All, Inc., 579 So.2d at 433; Coco v. Winston Industries, Inc., 341 So.2d 332, 335 (La.1976); Callender v. Del-champs, Inc., 542 So.2d 140,144 (La.App. 1st Cir.1989). The initial inquiry must always be directed at whether the trial court’s award for the particular injuries and their effects upon this particular injured person is a clear abuse of the trier of fact’s much discretion. Reck v. Stevens, 373 So.2d 498, 501 (La.1979). Recently in Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La.1993), cert. denied, — U.S. —, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994), the Louisiana Supreme Court noted that:
[T]he discretion vested in the trier of fact is “great,” and even vast, so that an appellate court should rarely disturb an award of general damages. Reasonable persons frequently disagree about the measure of general damages in a particular case. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award.
After carefully reviewing the entire record, we find that the trial court did not abuse its discretion in assessing the general damage award. The general damage award of $30,000.00 is not beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances.

CONCLUSION

For the reasons set forth herein, although we disagree with the trial court’s analysis of duty and standard of care, the results reached are correct and we affirm the judgment of the trial court. Defendant is assessed for all costs on appeal.
AFFIRMED.

. Although First National Bank assigned as error the trial court’s determination on the issue of liability, First National Bank did not assign as error the trial court's failure to allocate any fault *310 to plaintiff. As such, the issue of apportionment of fault is not before us on appeal.